UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CRISTIN JURJ**, as mother and
Next Friend of L.J., a minor,

|  |  |
|---|---|
| | Case No. |
| Plaintiff, | Hon. |

v.

**JAMIE SKYLIS**, individually, and in her
official capacity as a special education Paraeducator
of Paint Creek Elementary School, and

**THIES EY,** individually, and in his
official capacity as a special education Paraeducator
of Paint Creek Elementary School,

Defendants.

A. VINCE COLELLA (P49747)
MELANIE J. DUDA (P77165)
MATTHEW C. MCCANN (P85286)
MOSS & COLELLA, P.C.
Attorneys for Plaintiff
28411 Northwestern Hwy, Suite 1150
Southfield, MI 48034
248-945-0100/F: 248-945-1801
vcolella@mosscolella.com

1

NOW COMES Plaintiff CRISTIN JURJ, as Next Friend of L.J., a minor, by and through her attorneys, MOSS & COLELLA, P.C., by A. VINCE COLELLA, and for her Complaint and Demand for Jury Trial, states as follows:

## PRELIMINARY STATEMENT

1. This case arises out of the in-school assault of L.J., a student receiving special education services at the Paint Creek Elementary School and under the control of paraeducators, Defendants JAMIE SKYLIS, and THEIS EY.

2. On April 5, 2023, L.J. was the victim of unlawful and excessive force, having been violently shoved to the ground while secluded and alone in a small room with the two paraeducator Defendants, causing him L3 compression fracture,  to break his arm and experience other injuries and suffer other damages detailed herein.

3. Plaintiff brings these federal and state law claims to establish recognition that the assault was unjust and contrary to clearly established law, to secure compensation for these wrongful acts, and to help end the violence perpetrated by Defendants and other similarly positioned against the children of Michigan.

2

## **PARTIES, JURISDICTION AND VENUE**

4. Plaintiff L.J., a minor, is a resident of the County of Oakland, State of Michigan, and at all times relevant herein, was a special education student attending Paint Creek Elementary School located in the Couty of Oakland, State of Michigan.  Oakland County, Michigan is within the geographic area which comprises the Eastern District of Michigan, Southern Division.

5. Plaintiff Cristin Jurj, mother, guardian and next friend of L.J. is a resident of the County of Oakland, State of Michigan.  Oakland County, Michigan is within the geographic area which comprises the Eastern District of Michigan, Southern Division.  Plaintiff Cristin Jurj appears on behalf of L.J. pursuant to Fed. R. Civ. P. 17(c) and MCR 2.201(B) & MCR 3.202(A).

6. Defendant JAMIE SKYLIS (hereinafter "Skylis") is and, at all relevant times, was employed by the District as a paraeducator at the Paint Creek Elementary School, operated and maintained by the Lake Orion Community Schools District. At all relevant times herein, Defendant Skylis was acting under the color of state law, and she is being sued in her official and individual capacities,

3

respectively. Upon information and belief, Defendant Skylis is a resident of the County of Oakland, State of Michigan. Oakland County, Michigan is within the geographic area which comprises the Eastern District of Michigan, Southern Division.

7. Defendant THIES EY (hereinafter "Ey") is and, at all relevant times, was employed by the District as a paraeducator at the Paint Creek Elementary School, operated and maintained by the Lake Orion Community Schools District. At all relevant times herein, Defendant Ey was acting under the colors of state law, and he is being sued in his official and individual capacities, respectively. Defendant EY is a resident of the County of Macomb, State of Michigan. Macomb County, Michigan is within the geographic area which comprises the Eastern District of Michigan, Southern Division.

8. This is a civil rights action for damages brought pursuant to 42 U.S.C. §§ 1983 and the Fourth and Fourteenth Amendments to the United States Constitution and related state law claims against the above-named Defendants for their wrongful acts, committed by Defendants Skylis and Ey in their individual and official capacities.

4

9.  Jurisdiction is proper in this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

10. The conduct or occurrence giving rise to this cause of action is the assault of L.J. on April 5, 2023, at his school located in the Township of Orion, located in  the County of Oakland, State of Michigan, within the geographic area comprising the Eastern District of Michigan, Southern Division.

11. Pursuant to 28 U.S.C. §§ 1391(b)(2), venue is proper before this Honorable Court, as the Defendants reside within this judicial district and the conduct complained of occurred within this judicial district.

## <u>COMMON ALLEGATIONS</u>

12. Plaintiff adopts and incorporates by reference each and every allegation in each preceding paragraph as though fully set forth herein.

13. L.J., a student receiving special education services, has been diagnosed with Attention Deficit Hyperactivity Disorder, Oppositional Defiant Disorder, Adjustment Disorder with Mixed

Disturbance of Emotion and Conduct, and Moderate Intellectual Disability.

14. The manifestations of his diagnoses impact all areas of functioning, especially learning. L.J. is constantly anxious, disorganized, impulsive, easily overwhelmed, irritable, and hyperactive, which makes academic tasks difficult for him. He has difficulty regulating his emotions, which exacerbates his feelings of frustration, and further separates him from an academically strong self-image. L.J. relies on paraeducators to navigate his behavior and provide him an equal opportunity to succeed in his educational environment.

15. Lake Orion Schools identified L.J. as a student with a disability, qualifying for EarlyOn services under Early Child Developmental Delay initially. In 2017, L.J. began receiving services through an Individualized Educational Program ("IEP"). In December 2021, L.J.'s. eligibility for services changed to cognitive impairment.

16. In Fall 2022, L.J. began attending Paint Creek Elementary School in Lake Orion Schools. L.J. was identified as a student with a disability at Paint Creek Elementary School, and continued to be eligible for, and did receive. special education services through an IEP.

17. At Paint Creek Elementary School, pursuant to his IEP, L.J. attended special education classes within a Cognitive Impairment Self-Contained ("C.I.") classroom at Paint Creek Elementary School.

18. The C.I. classes are staffed with classroom aids and paraeducators to assist the students with special needs, like L.J.

19. Defendants Skylis and Eys were paraeducators assigned to work in the C.I. that L.J. attended, and as such, were responsible for the physical care and well-being of L.J. Often times, their responsibilities require them to be alone with L.J.

20. On or about April 5, 2023, L.J. rode the bus to school, accompanied by a bus aide who supervised L.J. At this time, he was not complaining of any pain or injuries.

21. Upon his arrival at Paint Creek Elementary School, on the aforementioned date, L.J. was met at the bus by his personal paraeducator who guided him to his special education classroom.

22. Shortly after his arrival in the classroom, it became evident that L.J. was particularly agitated. He began lying on the floor, refused to

comply with teacher's orders to remain seated in his chair, and instead sat in the teacher's chair.

23. At or around 9:00am, L.J. was removed from the special education classroom by rolling him in the teacher's chair and transporting him to the "red zone" used for seclusion.

24. Paint Creek Elementary School, at all relevant times herein, had adopted a disciplinary response protocol for students in the IEP program. This protocol applies to L.J.

25. Pursuant to the protocol, students subject to an IEP that exhibit defiant or unruly behavior are taken to the "red zone" used for seclusion at Paint Creek Elementary School.

26. Across a common area from the special education classroom is another room which contains three areas: the "yellow zone," the "red zone" and the padded seclusion room, in which students are placed in accordance with the level of intensity and aggression they are exhibiting.

27. The "yellow zone" is designated for students who are manifesting behaviors and is an area where students can regain control and are

expected to exhibit understanding of their problematic behavior and commit to better action.

28. The "red zone" is an area where students are secluded when they display behaviors including disturbing the classroom, throwing items, hitting a student and/or insubordination.

29. There is a door within the "red zone" for entry and exit to the padded seclusion room.

30. On the day in question, L.J. was placed in the "red zone" by one or both of the two individual Defendants, Jamie Skylis and/or Thies Ey.

31. While in the red zone, at approximately 9:06 AM on April 5, 2023, isolated and alone with Defendants Jamie Skylis and Thies Ey, L.J. remained unable to regulate his frustration, and was moving towards Defendant Ey.

32. In response, Defendants Jamie Skylis and Theis Ey negligently and/or recklessly applied excess force to L.J. who was helpless, secluded and effectively restrained in the room, causing L.J. to fall backwards to the ground from a standing position.

33. L.J. experienced immediate and excruciating pain after he fell, suffering from what would later be discovered to be broken bones in his wrist and an L3/ middle vertebrae fracture in the lumbar / lower spine.

34. Defendants Skylis and Eys were charged with the supervision, control and most importantly de-escalation of distressed IEP students like L.J.. They are responsible for and are trained to help special education students stabilize their emotions, especially those students like L.J., who are known to lack the ability to self-regulate properly.

35. Rather than remain composed and patient, and administering proper emotional-regulation tools, Defendants Skylis and Eys turned to physical force against a distressed student while he was in a secluded room, reducing him to tears and further distress.

36. After Defendants Skylis and Eys applied excessive force to L.J. in the seclusion room, L.J. was ostensibly suffering from incredible pain through his unrelenting sobbing and complaints.

37. While injured, still being secluded and held in the "red zone," L.J. let Defendants and other school staff who entered know that his hand

and elbow hurt and explicitly complained of back pain at least seven times; and requested "Need hospital, not ok".

38. A social worker entered the "red zone" where they observed L.J. in this state. The social worker attempted to engage L.J. in breathing exercises to help him regain calm, but this was unsuccessful.  L.J. even reported that he was unable to complete their exercises because "I'm too hurt to!"

39. The school physical therapist, Kelly McCue, was called to evaluate L.J. Her physical examination was extremely cursory and dismissive, reporting no injury, yet failing to rule out a broken bone, and providing L.J. only with ice as treatment.   L.J. tried to gain relief from the use of the ice bag and any other attention Ms. McCue was offering, which in turn was used as a way to attempt to modify his behavior – i.e. "using Kelly as a carrot." The ice bag ultimately melted and when L.J. requested a new one, was not provided with one.

40. Throughout the time in the "red zone," L.J. was forced to engage in timer-measured breaks, which were punitive in nature, and often prompted and response to his indications of injury.  His cries in pain

where specifically regarded as and recorded as "whining" by school staff.

41. In connection with the incident, Paint Creek Elementary School created a Student Injury Report Form, recording the injury as having occurred at 10:15 A.M., despite the fact that actually occurred at 9:06 A.M.

42. Despite the fact that the incident was recorded at 10:15 A.M., and in fact occurred at 9:06 A.M., no effort was made to contact or inform L.J.'s parents until around 12:12 PM, forcing L.J. to writhe in pain, crying at school for more than three hours.

43. After school officials dismissing clear signs of L.J.'s severe injury, and ignoring his pleas to go home, Paint Creek Principal, Lauren Smith, finally texted L.J.'s parents at 12:12 PM:

> "Hi Crissy and John. I need to speak with one of you. [L.J.] initiated a serious incident (physical) with our staff. Who is best to call right now? Lauren."

44. No one at the school had communicated to L.J.'s parents the gravity or severity of the injury, nor had anyone, upon information and belief, ever properly involved a medical professional - either one on

staff or by calling for an ambulance or other emergency medical services, to assess the injury.

45. The Principal and staff were instead focused on disciplining L.J. even after several school officials witnessed L.J.'s cries and complaints of pain.

46. L.J. was finally picked up by his grandmother at 12:50 P.M., who became immediately disturbed by his condition and involved Ms. Jurj via phone.

47. Shocked by L.J.'s grandmother's report, Ms. Jurj arranged for L.J. to be seen by an orthopedist later that same afternoon, understanding that his condition necessitated urgent medical invention.

48. En route to the orthopedist's office, with Ms. Jurj driving, L.J. expressed his pain and was crying on and off. L.J. also expressed a fear of angering Defendant Thies Ey and began sobbing.

49. Even at the office, L.J.'s fear and anxiousness had not ceased, and he was unusually clinging to his mother.

50. Notwithstanding L.J. crying out in pain the entire time, the doctors were successful in obtaining x-ray imaging of L.J.'s wrist and arm.

51. Upon review of the x-ray, the orthopedist immediately advised that both bones in L.J.'s left arm were broken, and that one bone would require expedited surgery to avoid permanent issues.

52. The orthopedist scheduled the surgery for the very next day, April 6, 2023.

53. Upon returning home from the orthopedist's office, Ms. Jurj and her husband asked L.J. about what had happened at school.  L.J. first explained that he had been taken to the "red zone" where he "losted [his] balance".

54. L.J. is a child with a cognitive impairment and had never used the word "balance" before, and when asked by his parents, did not know what it meant.

55. This was a clear sign to Ms. Jurj that L.J. was repeating and relaying what he had been told and heard happened at school.  After reassurance, L.J. cried and told his parents that the fall was caused by one or both of Defendants Jamie Skylis and Thies Ey.

56. Later that evening, L.J. told Ms. Jurj that when he fell "it hurted really very bad" and that he could not get up.  L.J. also told Ms. Jurj that neither  Defendant Jamie Skylis nor Defendant Thies Ey helped

him up despite the fact that he could not get up himself.  Instead, Defendants Jamie Skylis or Thies Ey "looked at me and said WELL" demonstrating - with the hand of his non-fractured arm on his hip - their body language.

57. L.J. explained that "the lady who helps me walk and stuff helped me up." This person was determined to be School District Physical Therapist Kelly McCue, referenced above.

58. The surgery went forward on April 6, 2023 at a hospital.  The doctor had to realign the bone, and two "K-wire" pins were in place to hold the bone in place until the healing process was complete.  The placement of "K-wire" pins is painful and also causes scarring.

59. Following arriving home after surgery, Ms. Jurj and her husband made the decision that based on the severity of the injuries and what L.J. had explained to them regarding the cause of the injury, a police report should be filed.

60. The Oakland County Sherriff's Office explained that in order for a report to be filed with the Office on L.J.'s behalf by his parents, an incident report from the school had to be provided.

61. Ms. Jurj contacted the Principal regarding the incident report on April 6, 2023.

62. The Principal informed Ms. Jurj that while the suspension paperwork had been completed, the incident report had not yet been completed.

63. On April 7, 2023, Ms. Jurj took L.J. to Beaumont Royal Oak Emergency Room because he woke up early that morning in pain and unable to lift his legs. An MRI determined the sensations L.J. was having in his legs were due to back pain and injury stemming from the April 5, 2023 subject incident. During his 6 hour stay he was diagnosed with an L3 compression fracture and was discharged with a back brace which he wore for a significant portion of the next three months.

64. On April 12, 2023 at 9:00 A.M., a Manifest Determination Review ("MDR") was held with respect to L.J.'s suspension from Paint Creek Elementary School. An MDR is a legally required meeting in connection with the suspension of a student who has an IEP.

65. While more than 10 employees of Defendant Lake Orion Community Schools attended the meeting, neither Defendant Jamie

Skylis nor Defendant Thies Ey were present, despite Ms. Jurj's request that they be in attendance.

66. When discussion of L.J.'s injuries occurred at the MDR, employees of Lake Orion Community Schools, including the Principal, claimed, without any basis or support, that the injuries Ms. Jurj relayed "must have been old."

67. After the MDR concluded, Ms. Jurj inquired as to the status of investigation into the April 5, 2023 incident and was told that no investigation had taken place.

68. Due to his significant injuries, L.J. had to complete the school year via homebound schooling.

69. On April 12, 2023, L.J. was brought to a follow-up visit regarding his L3 fracture to Dr. Casadei.

70. In May 2023, L.J. went for a follow-up visit to the orthopedist to have his cast removed. This was a very difficult experience for him due in part to sensory issues he experiences which are part and parcel of his cognitive impairment.   L.J. was so distraught during the pin removal procedure that he was crying and shaking and one

or both of his parents had to simultaneously restrain and comfort him.

71. As a result of his injuries, L.J. was wheelchair bound during participation in his Miracle League Baseball season. Miracle League is a charitable organization that provides children with disabilities an opportunity to play baseball as a team member in an organized league.  L.J. otherwise would have been able to run, jump, bend, and more fully participate in the game.

72. Defendants' conduct was done within the scope and course of their employment.

73. Defendants had actual knowledge of L.J.'s disabilities, his behavioral propensities, and his need for emotional support.

74. Ultimately, Defendants Skylis and Eys used excessive force upon L.J. while he was experiencing a behavioral crisis, necessitating medical care including surgery.

75. There was no pedagogical justification for the force used by Defendants Skylis and Ey.  The circumstances proceeding their actions did not meet the criteria for emergency seclusion, pursuant

to MCL 380.1307, MCL 380.1307h, or any other provision of The School Code of 1976 in its applicable form.

76. Additionally, Plaintiff L.J. sustained additional damages, including but not limited to past, present, and future medical expenses necessitated by this incident; pain and suffering; scarring; loss of sensation; and other damages further identified in discovery.

### COUNT I: DEPRIVATION OF CIVIL RIGHTS
### IN VIOLATION OF 42 U.S.C. § 1983 AGAINST DEFENDANT
### SKYLIS
### (FOURTH AMENDMENT - EXCESSIVE FORCE)

77. Plaintiff adopts and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

78. Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution, Defendant SKYLIS owed Plaintiff L.J. a duty to act prudently, with reasonable care, and otherwise to avoid unreasonable and excessive force.

79. Reasonable paraeducators in the position of Defendant SKYLIS at the time of this incident – i.e., prior to the use of excessive force against Plaintiff L.J. and prior to shoving him to the ground – would have known, in light of existing law, that the unlawfulness of this

action was apparent under the circumstances, would be a violation of clearly established law, and of L.J.'s constitutional rights against unlawful excessive force.

80. Defendant Skylis committed the above described action and/or omission under the color of law and by virtue of her authority as special education paraeducator for Paint Creek Elementary School and substantially deprived L.J. of his clearly established rights, privileges, and immunities guaranteed to him as a citizen of the United States by the First, Fourth, and Fourteenth Amendments of the United States Constitution in violation of U.S.C §1983, which includes, but is not limited to, the following:

a. Freedom from the use of unreasonable, unjustified and excessive force;

b. Freedom from deprivation of liberty and property without due process of law;

c. Freedom from summary punishment;

d. Freedom from arbitrary governn1ental activity which shocks the conscience of a civilized society.

81. As a direct and proximate result of the aforementioned conduct, Plaintiff L.J. suffered terror, fright, shock and fear as Defendant

SKYLIS shoved him to the ground in an isolated and secluded room. L.J. also suffered physical injury, emotional distress, psychological trauma, and pain and suffering as a result of the aforementioned conduct.

## COUNT II: DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AGAINST DEFENDANT EY (FOURTH AMENDMENT - EXCESSIVE FORCE)

82. Plaintiff adopts and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

83. Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution, Defendant EY owed L.J. a duty to act prudently, with reasonable care, and otherwise to avoid unreasonable and excessive force.

84. Defendant Ey committed the above described action and/or omission under the color of law and by virtue of her authority as special education paraeducator for Paint Creek Elementary School and substantially deprived L.J. of his clearly established rights, privileges, and immunities guaranteed to him as a citizen of the United States by the First, Fourth, and Fourteenth Amendments of

the United States Constitution in violation of U.S.C §1983, which

includes, but is not limited to, the following:

a. Freedom from the use of unreasonable, unjustified and excessive force;

b. Freedom from deprivation of liberty and property without due process of law;

c. Freedom from summary punishment;

d. Freedom from arbitrary governmental activity which shocks the conscience of a civilized society.

85. Reasonable paraeducators in the position of Defendant Ey at the time of this incident – i.e., prior to the use of excessive force against L.J. and prior to shoving him to the ground – would have known, in light of existing law, that the unlawfulness of this action was apparent under the circumstances, would be a violation of clearly established law, and of L.J.'s constitutional rights against unlawful excessive force.

86. As a direct and proximate result of the aforementioned conduct, Plaintiff L.J. suffered terror, fright, shock and fear as Defendant EY shoved him to the ground in an isolated and secluded room. L.J. also

suffered physical injury, emotional distress, psychological trauma, and pain and suffering, as a result of the aforementioned conduct.

## COUNT III: ASSAULT AND BATTERY AGAINST DEFENDANT SKYLIS (IN VIOLATION OF STATE LAW)

87. Plaintiff adopts and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

88. The aforementioned actions and conduct of Defendant Skylis as incorporated herein, were willful, wanton, intentional and/or reckless.

89. The aforementioned actions and conduct of Defendant Skylis as incorporated herein, created a reasonable apprehension of an immediate threat of harm and/or offensive touching to L.J.

90. The aforementioned actions and conduct by Defendant Skylis as incorporated herein, did in fact constitute an offensive and harmful touching of L.J.

91. Defendant Skylis knew or should have known that her aforementioned actions and/or conduct would cause injury to L.J. and furthermore, her conduct did in fact cause the aforementioned injury to L.J.

23

92. As a direct and proximate result of the aforementioned conduct, L.J. suffered terror and fear as Defendant Skylis violently shoved him to the ground while isolated in a small, secluded room causing him injuries. Plaintiff L.J. also suffered physical injury, emotional distress, psychological trauma, and pain and suffering, as the result of the aforementioned conduct.

**COUNT IV: ASSAULT AND BATTERY AGAINST DEFENDANT EY (IN VIOLATION OF STATE LAW)**

93. Plaintiff adopts and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

94. The aforementioned actions and conduct of Defendant Ey as incorporated herein, were willful, wanton, intentional and/or reckless.

95. The aforementioned actions and conduct of Defendant Ey as incorporated herein, created a reasonable apprehension of an immediate threat of harm and/or offensive touching to L.J.

96. The aforementioned actions and conduct by Defendant Ey as incorporated herein, did in fact constitute an offensive and harmful touching of L.J.

97. Defendant Ey knew or should have known that his aforementioned actions and/or conduct would cause injury to L.J. and furthermore, his conduct did in fact cause the aforementioned injury to L.J.

98. As a direct and proximate result of the aforementioned conduct, L.J. suffered terror and fear as Defendant Ey violently shoved him to the ground while isolated in a small, secluded room causing him injuries. L.J. also suffered physical injury, emotional distress, psychological trauma, and pain and suffering, as the result of the aforementioned conduct.

## COUNT V: GROSS NEGLIGENCE AGAINST DEFENDANT JAMIE SKYLIS
### (IN VIOLATION OF STATE LAW)

99. Plaintiff adopts and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

100. At all material times, Defendant Skylis, as a Paint Creek Elementary paraeducator, owed a duty to all persons, including L.J., to avoid wanton, willful, or reckless misconduct; to avoid grossly negligent conduct; and to avoid conduct so reckless as to demonstrate a substantial lack of concern as to whether injury results.

101. Notwithstanding the aforementioned duties, Defendant's conduct, as described herein, foreseeably created a risk of severe physical, emotional, and psychological harm to L.J., as well as harmed L.J.'s opportunity for education.

102.     The special relationship between Defendant and the young, defenseless minor with a cognitive impairment L.J. gave rise to the duty of Defendant to enhance L.J.'s education, safety, protection, and benefit and to not inflict harm upon L.J.'s safety and education.

103.     Defendant owed L.J. a duty of reasonable care in their educational, social, and authority roles as to L.J., because of Defendant's status as special education paraeducator and their *de facto* control over L.J. who was lawfully bound to attend school and are thereby subject to the authority of the school under the law.

104.     Defendant's reckless and grossly negligent treatment of L.J. was the direct and proximate cause of the L.J.'s past and future harms and damages to each of L.J.'s education, psychological and emotional well-being, to L.J.'s dignity, to L.J.'s self-worth, to L.J.'s ability to trust people and authority figures, and to L.J.'s physical integrity.

105.    The injuries, damages, harms, and losses that L.J. sustained were directly and proximately caused by Defendant's willful and wanton conduct while employed at Lake Orion Community Schools' Paint Creek Elementary School.

106.    Defendant's treatment of L.J. was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for whether L.J. would be injured, or whether harm would result.

## COUNT V: GROSS NEGLIGENCE AGAINST DEFENDANT THIES EY (IN VIOLATION OF STATE LAW)

107.    Plaintiff adopts and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

108.    At all material times, Defendant Thies Ey, as a Paint Creek Elementary paraeducator, owed a duty to all persons, including L.J., to avoid wanton, willful, or reckless misconduct; to avoid grossly negligent conduct; and to avoid conduct so reckless as to demonstrate a substantial lack of concern as to whether injury results.

109.    Notwithstanding the aforementioned duties, Defendant's conduct, as described herein foreseeably created a risk of severe physical, emotional, and psychological harm to L.J., as well as harmed L.J.'s opportunity for education.

27

110.   The special relationship between Defendant and the young, defenseless cognitively impaired minor L.J. gave rise to the duty of Defendant to enhance L.J.'s education, safety, protection, and benefit and to not inflict harm upon L.J.'s safety and education.

111.   Defendant owed L.J. a duty of reasonable care in their educational, social, and authority roles as to L.J., because of Defendant's status as a special education paraeducator and *de facto* control over L.J. who was lawfully bound to attend school and are thereby subject to the authority of the school under the law.

112.   Defendant's reckless and grossly negligent treatment of L.J. was the direct and proximate cause of L.J.'s past and future harms and damages to each of L.J.'s education, psychological and emotional well-being, to L.J.'s dignity, to L.J.'s self-worth, to L.J.'s ability to trust people and authority figures, and to L.J.'s physical integrity.

113.   The injuries, damages, harms, and losses that L.J. sustained were directly and proximately caused by Defendant's willful and wanton conduct while employed at Lake Orion Community Schools' Paint Creek Elementary School.

114.     Defendant's treatment of L.J. was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for whether L.J. would be injured, or whether harm would result.

**<u>RELIEF AND DAMAGES REQUESTED</u>**

WHEREFORE, Plaintiff Cristin Jurj, as Next Friend of L.J., a minor, respectfully requests that this Honorable Court enter judgment in her favor against Defendants Jamie Skylis and Thies Ey, and award the following damages:

A. Compensatory damages in excess of $75,000;

B. Punitive damages against Defendants Jamie Skylis and Thies Ey;

C. Costs incurred and attorney's fees pursuant to 42 U.S.C § 1988;

D. Prejudgment interest; and

E. Any other relief this Court deems equitable and just.

Respectfully submitted,

MOSS & COLELLA, P.C.

BY: /s/ A. Vince Colella
A. VINCE COLELLA (P49747)
Attorney for Plaintiff
28411 Northwestern Hwy, Suite 1150
Southfield, MI 48034
(248)-945-0100
DATED: October  28, 2024          vcolella@mosscolella.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**CRISTIN JURJ**, as mother and
Next Friend of L.J., a minor,

                                           Case No.
        Plaintiff,                      Hon.

v.


**JAMIE SKYLIS**, individually, and in her
official capacity as a special education Paraeducator
of Paint Creek Elementary School, and

**THIES EY,** individually, and in his
official capacity as a special education Paraeducator
of Paint Creek Elementary School,


         Defendants.

---

A. VINCE COLELLA (P49747)
MELANIE J. DUDA (P77165)
MATTHEW C. MCCANN (P85286)
MOSS & COLELLA, P.C.
Attorneys for Plaintiff
28411 Northwestern Hwy, Suite 1150
Southfield, MI 48034
248-945-0100/F: 248-945-1801
vcolella@mosscolella.com

---

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, Cristin Jurj, as Next Friend of L.J., a minor, by and through her attorneys, MOSS & COLELLA, P.C., by A. VINCE COLELLA, and respectfully requests jury trial in the above captioned matter.

Respectfully submitted,

MOSS & COLELLA, P.C.

BY: /s/ A. Vince Colella
A. VINCE COLELLA (P49747)
Attorney for Plaintiff
28411 Northwestern Hwy, Suite 1150
Southfield, MI 48034
(248)-945-0100

DATED: October  28, 2024      vcolella@mosscolella.com